IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Cynthia Pagán-Porratta, et al.,<br><br>    **Plaintiffs,**<br><br>             vs.<br><br>Municipality of Guaynabo, et al.,<br><br>    **Defendants.** | **CIVIL NO:** 17-1961 (RAM) |

**OPINION AND ORDER**

RAÚL M. ARIAS-MARXUACH, District Judge

Pending before the Court is Defendants' *Motion for Summary Judgment* (Docket No. 27), alongside a *Statement of Uncontested Material Facts* (Docket No. 25). Plaintiffs filed a *Memorandum in Opposition to Motion for Summary Judgment* ("Opposition") (Docket No. 34) accompanied by a *Response to Defendants' Statement of Uncontested Material Facts* ("Response") (Docket No. 35). Lastly, Defendants filed *Defendants' Reply to Plaintiffs' Opposition to Motion for Summary Judgment and Response to Defendants' Statement of Uncontested Facts* ("Reply") (Docket No. 38).

For reasons stated below, the Court **GRANTS** Defendants' *Motion*.

**I.   FACTUAL BACKGROUND**

On July 14, 2017, Cynthia Pagan-Porrata ("Pagán-Porrata"), Anibal Jiménez-Haddock ("Jiménez-Haddock"), Daniel Cumbas-Aponte

("Cumbas-Aponte"),[1]   Roberto   Santos-Torres   ("Santos-Torres"),
Carlos Morales-Figueroa ("Morales-Figueroa"), Luis Ortiz-Ojeda
("Ortiz-Ojeda"),   and   their   respective   conjugal   partnerships
(collectively, "Plaintiffs"), filed a *Complaint* against the
Municipality of Guaynabo and Wilfredo Martinez Hernandez, in his
official capacity as Police Commissioner of the Guaynabo Municipal
Police Department (collectively, "Defendants" or "Municipality").

In the *Complaint*, Plaintiffs allege that Defendants violated
the Fair Labor Standards Act ("FLSA"). 29 U.S.C. § 201, *et seq*.
They also invoke supplemental jurisdiction by claiming violations
of local labor laws and the Puerto Rico Constitution. During the
time-frame alleged (on or around August 2012), Plaintiffs worked
as canine unit officers and were allegedly not compensated for
overtime work performed.[2] Specifically, they request payment for
fourteen (14) hours spent taking care of their dogs outside of
"working hours." (Docket No. 25 ¶ 63). These duties included
feeding, watering, grooming, bathing, exercising, transporting,
training, and bonding with the dogs. (Docket No. 1 ¶ 28). They

---

[1] There is some discrepancy regarding the spelling of Mr. Daniel Cumbas-Aponte's
last name. Since the spelling in Defendants' Statement of Uncontested Material
Facts at Docket No. 25 appears as "Cumba", for clarity's sake the Court shall
adopt the same spelling for effects of this Opinion and Order.

[2] The ending of this period varies as several of the plaintiffs have resigned
since the filing of this suit. Plaintiff Ortiz-Ojeda resigned from the canine
unit on March 23, 2016. (Docket No. 1 ¶ 40.) Likewise, Cumba-Aponte resigned on
July 6, 2018 and Jimenez-Haddock on February 15, 2018. Plaintiffs admitted both
resignations. (Docket No. 35 ¶¶ 42, 51). On the other hand, Plaintiffs Pagan-
Porrata, Santos-Torres and Morale-Figueroa continue working for the canine unit.

also included cleaning the canine kennels after police interventions by officers. Id. ¶ 37.[3]

Defendants denied the allegations in the *Complaint* (Docket No. 11 at 11) and on October 4, 2018, filed a *Motion for Summary Judgement*. (Docket No. 27). First, they argue that the Defendants have been paying Plaintiffs "0.5" hours per day (3.5 hours per week) for off-duty canine care and Plaintiffs failed to prove that time was insufficient. Id. at 2. Second, they contend that Plaintiffs generally worked overtime and accumulated compensatory time off rather than cash overtime, but Defendants were unaware of additional overtime work because Plaintiffs failed to report it. Id. Moreover, Defendants allege that Plaintiffs failed to evidence that Defendants discouraged or prevented them from reporting overtime work. Third, Defendants assert that although Plaintiffs allege they often worked more than a 35-hour shift, none of them, except Cumba-Aponte, accumulated more than 480 hours in Federal Compensatory Time during the relevant period. Thus, they are not owed cash overtime under the FLSA. Id. at 3. Finally, Defendants argue that Plaintiffs' FLSA claim was limited by FLSA's two-year statute of limitations. Id.

In their *Opposition*, Plaintiffs argue that Defendants miscalculated their overtime hours and are owed payment for all

---

[3] Allegedly, this activity alone took 2.5-3 hours per week. (Docket No. 1 ¶ 37).

overtime hours worked by them. (Docket No. 34 at 4). They also contend that the statute of limitations for payment of compensatory time is tolled until each Plaintiff stops working for Defendants and until the Guaynabo Municipal Police Department places a poster of an employee's overtime rights at the station. Id. at 5-6. Plaintiffs' also posit that genuine issues of material fact prevent summary judgment of the case. (Docket No. 35).

Defendants subsequently filed a *Reply*. (Docket No. 38). They argue that Plaintiffs failed to create an issue of fact regarding the recording of their overtime work performed. Id. at 3-6. They further allege that Plaintiffs failed to create an issue of fact that the Defendants had not been properly compensating the officers for additional canine care. Id. at 6-7. Lastly, they aver that Plaintiffs acknowledged they failed to make Defendants aware of the alleged overtime work performed by Defendants. Id. 8-10.

## II. LEGAL STANDARD

A motion for summary judgment is governed by Fed. R. Civ. P. 56(a). This rule entitles a party to judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party." Mercado-Reyes v. City of Angels, Inc., 320 F. Supp. 3d 344, 347 (D.P.R. 2018) (quotation omitted). On the

other hand, a fact is considered material "if it has the potential of determining the outcome of the litigation." Id.

The moving party has "the initial burden of 'demonstrat[ing] the absence of a genuine issue of material fact' with definite and competent evidence." Id. (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). Once this occurs, the burden shifts to the nonmovant. The United States Court of Appeals for the First Circuit ("First Circuit") has stated that a non-moving party must "with respect to each issue on which he has the burden of proof, […] demonstrate that a trier of fact reasonably could find in his favor." Woodward v. Emulex Corp., 714 F.3d 632, 637 (1st Cir. 2013) (quotation omitted).

While a Court will draw all reasonable inferences in favor of the non-movant, it will disregard unsupported or conclusory allegations. See Johnson v. Duxbury, Massachusetts, 2019 WL 3406537, at *2 (1st Cir. 2019). The United States Supreme Court has stated that the existence of "some alleged factual dispute between the parties will not affect an otherwise properly supported motion for summary judgment." Scott v. Harris, 550 U.S. 372, 379 (2007) (quotation omitted). A court should review the record "as a whole," and "may not make credibility determinations or weigh the evidence" as that is a job for the jury. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 135 (2000).

Finally, Local Rule 56 also governs summary judgement. *See* D.P.R. Civ. R. 56. Per the rule, a motion for summary judgement must include "a separate, short, and concise statement of material facts, set forth in numbered paragraphs, as to which […] there is no genuine issue of material fact to be tried." Id. A nonmoving party must then "admit, deny or qualify the facts supporting the motion […] by reference to each numbered paragraph of the moving party's statement of material facts." Id. The First Circuit has highlighted that "[p]roperly supported facts […] shall be deemed admitted unless controverted in the manner prescribed by the local rule." Advanced Flexible Circuits, Inc. v. GE Sensing & Inspection Techs. GmbH, 781 F.3d 510, 520 (1st Cir. 2015) (quotation omitted). "[L]itigants ignore [those rules] at their peril". Gautier v. Brennan, 2019 WL 2754673, at *2 (D.P.R. 2019) (quotation omitted).

### III. FINDINGS OF FACT

Before discussing the undisputed facts, the Court must address several compliance issues which arose when reviewing Plaintiffs' *Response* to the Statement of Uncontested Material Facts ("SUMF"). (Docket No. 35). In general, Plaintiffs admitted, denied or qualified the facts presented in the SUMF filed by Defendants.[4]

---

[4] In their SUMF, Defendants presented ninety-four (94) assertions of uncontested fact. (Docket No. 25). In their *Opposition*, Plaintiffs admitted sixty-five (65) facts and denied twenty-two (22) facts. Plaintiffs also considered two (2) facts to be immaterial. (Docket No. 35 ¶¶ 14 and 27). The Court notes however that Plaintiffs neither outright admitted, denied nor qualified five (5) facts. Id. at ¶¶ 3, 4, 5, 64, 81. These last five will therefore be deemed admitted.

However, Plaintiffs failed to include a response for proposed undisputed Facts Nos. 3, 4, 5, 64 and 81. (Docket No. 35 at 2, ¶¶ 3-5, at 24-25, ¶ 64 and at 29, ¶ 81). Consequently, these facts are deemed admitted per Local Rule 56 and Fed. R. Civ. P. 56(e), the latter of which states that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact […], the court may […] consider the fact undisputed for purposes of the motion."

Plaintiffs sought to create a material issue of fact concerning accrual of compensatory time by asserting that most calculations of their hours worked are wrong because Defendants counted a quarter of an hour as ".15" of an hour, rather than the requisite ".25" minutes of an hour. (Docket No. 35 ¶ 28). Defendants allegedly also miscounted a half-hour as ".30" of an hour rather than the requisite ".5", and so forth. Id. This caused Plaintiffs Pagán-Porrata (Docket No. 35 ¶¶ 35-36), Jiménez-Haddock (Id. ¶¶ 44-45), Cumba-Aponte (Id. ¶¶ 53-54), Santos-Torres (Id. ¶¶ 62-63), Morales-Figueroa (Id. ¶¶ 70-71) and Luis Ortiz-Ojeda (Id. ¶¶ 72-73) to have incorrect hourly balances in accrued compensatory time. As proof, however, Plaintiffs only submitted handwritten comments as to how many hours were allegedly unrecorded. (Docket Nos. 35-2, 35-3, 35-4, 35-5, 35-6 and 35-7). In their Reply, Defendants contend that these calculations of hours, even if done in the most favorable manner towards the nonmovants, would still

fail to pass for most Plaintiffs, Cumba-Aponte excluded, the 480-hour FLSA threshold which would justify a cash compensation for overtime. (Docket No. 38 at 4-6). The Court notes that no other evidence, neither affidavit nor sworn statement, was provided which could attest to these differences in hourly calculations. The same occurred regarding Fact No. 85. (Docket No. 35 at ¶ 85).

The First Circuit has stated that a "nonmovant can thwart the motion [for summary judgement] only by showing through materials of evidentiary quality that a genuine dispute exists about some material fact." Acosta v. Ames Dep't Stores, Inc., 386 F.3d 5, 8 (1st Cir. 2004). Similarly, summary judgment is appropriate when a nonmoving party rests upon "conclusory allegations […] and unsupported speculation." Johnson, 2019 WL 3406537, at *2 (internal quotation omitted). Therefore, while there might be some discrepancy as to the hours calculated, without evidentiary proof stating otherwise, the purported factual disputes are not enough to surpass a well-founded summary judgment. See e.g., Baum-Holland v. El Conquistador P'ship, L.P., S.E., 336 F. Supp. 3d 6, 20 (D.P.R. 2018) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S.242, 247-248(1986)) (Finding that the mere existence "of some alleged factual dispute between the parties will not affect an otherwise properly supported motion for summary judgment."). These facts are thus admitted.

Likewise, a similar situation occurs regarding allegedly
disputed facts related to the calculations for compensatory time
and whether Plaintiffs surpassed the 480-hour FLSA threshold. For
example, Plaintiffs attempted to deny Fact No. 37 regarding
plaintiff Pagan-Porrata's Federal Compensatory Time by stating
that the time calculations were inaccurate, and that Defendants
had miscounted Pagan-Porrata's overtime. (Docket No. 35 at ¶ 37).
However, a review of the denial's explanation reveals that
Plaintiffs failed to oppose the truth of the fact itself. While,
they attempted to explain how a recalculation of Pagan-Porrata's
hours with the "correct" fraction of the hour was necessary, they
still failed to proffer proof as to how Pagan-Porrata supposedly
surpassed the 480-hour FLSA threshold and therefore, should
receive cash compensation. In the process, they failed to
contradict the fact itself. The fact is thus admitted. *See* Marina
de Ponce, Inc. v. Fed. Deposit Ins. Corp., 2018 WL 1061441, at *2
(D.P.R. 2018) ("The denials presented by Plaintiff Marina do not
oppose the truth of the statement offered and are either irrelevant
to the matter at hand, provide additional evidence not related to
the fact in question and/or failed to contradict it.") This also
applies to similarly situated facts, such as Fact Nos. 37, 46, 55,
72 and 80 (Docket No. 25 ¶ 37, 46, 55, 72 and 80). These facts are
therefore also admitted. Finally, Fact No. 14 is also admitted
given that Plaintiffs' only response to said fact was simply

claiming it is "not material" without providing any additional

evidence or explanation **as to why the fact was immaterial**.

The Court will therefore deem as uncontested the following

assertions of fact contained in Plaintiffs' SUMF:[5]

Regulatory Provisions

1. If for any reason the time worked by the MG police officer
   exceeds the legal work shift, it shall result in compensatory
   time at a rate of time and a half. (Docket No. 25 ¶ 1).

2. Time worked that exceeds a regular shift shall result in
   compensatory time at a rate of time and a half. (Docket No.
   25 ¶ 2).

3. For MG police officers, "Municipal Compensatory Time"
   consists of hours worked in excess of a legal work shift
   (whether daily or weekly), and accumulated at time-and-a-half
   (1.5), if the employee does not exceed 40 hours a week.
   (Docket No. 25 ¶ 3).

4. "Municipal Compensatory Time" can only be enjoyed, and is not
   subject to payment. (Docket No. 25 ¶ 4).

5. For MG police officers, "Federal Compensatory Time" is time
   worked in excess of 40 hours a week which is accumulated at
   time-and-a-half (1.5); the accumulated excess over 480 hours
   of Federal Compensatory Time is subject to payment at the
   salary the employee is receiving at the time of payment.
   (Docket No. 25 ¶ 5).

6. Under no circumstances are MG police officers allowed to work
   in excess of the legal work shift without the consent and
   approval of the immediate supervisor, who will make the
   Administration Division of the MG Police Department following
   the applicable procedure, by writing, justifying the reason
   or need thereto. (Docket No. 25 ¶ 6).

7. Pursuant to the Regulation of the Autonomous Municipality of
   Guaynabo to Establish the Accumulation of Compensatory Time

---

[5] The numbers for the material facts herein deemed admitted do not necessarily
coincide with their respective numbers in the SUMF. Therefore, the Court also
includes a reference to the original paragraph number in the SUMF.

and its Enjoyment, it is the responsibility of every employee that he or she perform the work within the legal work shift, and not perform work beyond the legal work shift without the corresponding authorization. Moreover, anyone who works overtime without the corresponding authorization will not be credited with the overtime worked. (Docket No. 25 ¶ 7).

8. Pursuant to the Regulation of the Autonomous Municipality of Guaynabo to Establish the Accumulation of Compensatory Time and its Enjoyment, the employee and his supervisor must use the form titled "Authorization of Overtime," complete, sign and sent to the Office of Administration of Human Resources within five (5) business days of the supervisor's authorization and performance of the work. (Docket No. 25 ¶ 8).

9. Pursuant to the Regulation of the Autonomous Municipality of Guaynabo to Establish the Accumulation of Compensatory Time and its Enjoyment, if the procedure is not followed, the Municipality does not have to provide compensatory time or payment in excess of the 480 hours. (Docket No. 25 ¶ 9).

10. Pursuant to the Regulation of Work Shift and Attendance for the Employees of the Autonomous Municipality of Guaynabo, municipal employees must attend work with regularity, punctuality and comply with the established work shift. (Docket No. 25 ¶ 10).

11. The Municipality of Guaynabo is utilizing KRONOS, an automated time and attendance system, to track and monitor when municipal employees, such as plaintiffs, punches in and out of work. (Docket No. 25 ¶ 11).

Plaintiffs' general knowledge of rights under the FLSA

12. The Regulation of the Autonomous Municipality of Guaynabo to Establish the Accumulation of Compensatory Time and its Enjoyment states as its legal basis the Fair Labor Standards Act, 29 U.S.C. 201, et seq., and its implementing regulations, among other laws. (Docket No. 25 ¶ 12).

13. By May 2015, the plaintiffs had already been provided with a copy of (i) Regulation of the Municipality of Guaynabo Police Department, and (ii) Regulation of the Autonomous Municipality of Guaynabo to Establish the Accumulation of Compensatory Time and its Enjoyment; and (iii) Regulation of Work Shift and Attendance for the Employees of the

Autonomous Municipality of Guaynabo. (Docket No. 25 ¶ 13).

14. The Municipality pays the plaintiffs on a bi-monthly basis (i.e. payday falls on the same days of each month). (Docket No. 25 ¶ 14).

The "Back Wage and Compliance and Payment Agreement" between the U.S. Department of Labor and the Municipality of Guaynabo

15. On March 30, 2016, the U.S. Department of Labor executed a "Back Wage and Compliance and Payment Agreement" (the "Agreement") with plaintiffs' employer, the Municipality of Guaynabo. (Docket No. 25 ¶ 15).

16. The Agreement was the result of an investigation conducted by the U.S. Department of Labor's Wage and Hour Division which covered the Municipality of Guaynabo's operations from May 6, 2013 to May 3, 2015. (Docket No. 25 ¶ 16).

17. The investigation included, *inter alia*, the hours worked in excess of 40 hours per week by K-9 municipal police officers who had dogs assigned to them. (Docket No. 25 ¶ 17).

18. Plaintiffs Cynthia Pagán-Porrata, Aníbal Jiménez-Haddock, Daniel Cumba-Aponte, Roberto Santos-Torres, Carlos Morales-Figueroa, Luis Ortiz-Ojeda were among the K-9 municipal police officers included in the investigation conducted by the U.S. Department of Labor's Wage and Hour Division. (Docket No. 25 ¶ 18).

19. As a result of the investigation and subsequent Agreement, plaintiffs Cynthia Pagán- Porrata, Aníbal Jiménez, Daniel Cumba-Aponte, Roberto Santos-Torres, Carlos Morales Figueroa, and Luis Ortiz-Ojeda received back-pay for all uncompensated work performed in excess of 40 hours per week accrued from May 6, 2013 to May 3, 2015. (Docket No. 25 ¶19).

20. Plaintiff Pagán-Porrata received $ 2,383.49; plaintiff Jiménez-Haddock $ 1,552.74; plaintiff Cumba-Aponte $2,141.05; plaintiff Santos-Torres $ 656.18; plaintiff Morales Figueroa $ 1,081.71; and Ortiz-Ojeda $ 61.19. (Docket No. 25 ¶ 20).

The December 16, 2016 letter

21. On December 16, 2016, the Director of Human Resources of the Municipality of Guaynabo at the time, Mr. Eduardo R. Faría-Rodríguez, issued a letter to plaintiffs Cynthia Pagan Porrata, Aníbal Jiménez-Haddock, Daniel Cumba-Aponte, Roberto Santos-Torres, and Carlos Morales-Figueroa. (Docket No. 25 ¶ 21).

22. Plaintiffs Cynthia Pagan-Porrata, Aníbal Jiménez-Haddock, Daniel Cumba-Aponte, Roberto Santos-Torres, and Carlos Morales-Figueroa received the letter dated December 16, 2016 during the month of December 2016. (Docket No. 25 ¶ 22).

23. The December 16, 2016 letter notified said plaintiffs that effective January 1, 2017, plaintiffs' daily legal work shift in the K-9 unit will consist of 6.5 hours performing work at the municipality physically, and .5 hours of dog maintenance time at home, for a total daily legal work shift of 7 hours per day, 35 hours per week. (Docket No. 25 ¶ 23).

24. The December 16, 2016 letter further notified said plaintiffs that in the event the municipality required him or her to work in the municipality physically excess of 7 hours per day, the municipality will credit him or her with 30 minutes of compensatory time for each day that occurred, and the plaintiff had a K-9 dog in his or her care. (Docket No. 25 ¶ 24).

25. Moreover, the municipality will credit the plaintiff with 30 minutes of compensatory time for each day off, holiday or vacation day the plaintiff had a K-9 dog in his or her care. (Docket No. 25 ¶ 25).

26. The December 16, 2016 letter notified the plaintiff that effective April 4, 2015, the municipality will credit the plaintiff with 30 minutes of compensatory time for each day the plaintiff had a K-9 dog in his or her care. (Docket No. 25 ¶ 26).

Plaintiffs' Attendance and Time Worked

27. On September 4, 2018, personnel from the Department of Human Resources finalized a report (the "Report") of the hours worked per week by K-9 Unit police officers plaintiffs Cynthia Pagan-Porrata, Aníbal Jiménez-Haddock, Daniel Cumba-Aponte, Roberto Santos Torres, Carlos Morales-Figueroa and Luis Ortiz-Ojeda, from May 1, 2015 to August

1, 2018, or until the employee ceased working for the K-9 Unit ascribed to the Municipality of Guaynabo's Police Department. (Docket No. 25 ¶ 28).[6]

28. The documents utilized to generate the Report were (i) the KRONOS attendance records of Cynthia Pagan-Porrata, Aníbal Jiménez-Haddock, Daniel Cumba-Aponte, Roberto Santos-Torres, Carlos Morales-Figueroa and Luis Ortiz-Ojeda and (ii) letter issued by former Director of the Department of Human Resources, Eduardo Faría, on December 16,2016, to K-9 Unit Police Officers Cynthia Pagan-Porrata, Aníbal Jiménez-Haddock, Daniel Cumbas-Aponte, Roberto Santos-Torres, and Carlos Morales-Figueroa. (Docket No. 25 ¶ 29).[7]

29. Pursuant to Municipal Ordinance No. 82, issued on November 27, 2002, the work-shift for all municipal police officers, medics, paramedics and firemen is 7 hours per day, 35 hours per week. (Docket No. 25 ¶ 30).

30. Plaintiffs' work shift is thirty-five (35) hours per week. (Docket No. 25 ¶ 31).

Plaintiff Cynthia Pagán-Porrata

31. Plaintiff Pagán-Porrata began working for the municipality's police department on February 1, 2008. (Docket No. 25 ¶ 32).

32. Plaintiff Pagán-Porrata was assigned to the canine unit of

---

[6] In their *Response*, Plaintiffs provided a mixed response to this fact. While they admitted that the Guaynabo Human Resources Department finalized the report, they also denied its accuracy and stated that it was immaterial. However, a review of Plaintiffs' explanation for its response reveals that they failed to contradict the fact itself. The fact is thus admitted.

[7] Plaintiffs never questioned the authenticity of Defendants' Exhibit 17 "Certification of work hours and accrued comp. time" (Docket No. 25-17). The Court notes that the Certification appears on official "Autonomous Municipality of Guaynabo Human Resources Office" letterhead, bears the seal of the Municipality and contains the signature of Giovanni Mercado-Reyes, Human Resources Director of the Municipality. Therefore, it should be considered self-authenticating under Fed. R. Civ. P. 902(1). *See e.g.,* Jones v. Perry, 215 F. Supp. 3d 563, 567 n.1 (E.D. Ky. 2016) (holding that a letter bearing the seal and letterhead of the Commonwealth of Kentucky and the signature of a Warden was also self-authenticating under Fed. R. Civ. P. 902(1)); *see also,* Berel Co. v. Sencit F/G McKinley Assocs., 710 F. Supp. 530, 547 (D. N.J. 1989)("This meeting is fully documented in a letter […]on Agency letterhead and signed by […] [the] Director of Technical Services. […] No party has asserted that the document is not what it claims to be, and it appears to be within the provision for self-authenticating documents. *See* Fed.R.Evid. 902(2).")

the municipality's police department on August 4, 2012. (Docket No. 25 ¶ 33).

33. Plaintiff Pagán-Porrata continues working for the municipality's canine unit. (Docket No. 25 ¶ 34).

34. As of May 1, 2015, plaintiff Cynthia Pagán-Porrata had a balance of 33:10 hours in accrued compensatory time. (Docket No. 25 ¶ 35).

35. Plaintiff Cynthia Pagán-Porrata had worked a total of 227.95 hours in excess of 40 hours per week for the time period commencing May 1, 2015 to August 1, 2018. (Docket No. 25 ¶ 36).

36. Assuming that all of the compensatory time plaintiff Pagán-Porrata had accrued by May 1, 2015 is Federal Compensatory Time, rather than Municipal Compensatory Time, plaintiff Pagán-Porrata accrued around 261 (33+228 = 261) hours in Federal Compensatory Time, which is 219 (480 - 261 = 219) hours below the 480 hour threshold under the FLSA for the payment of cash overtime. (Docket No. 25 ¶ 37).

37. Between September 16, 2016 and November 30, 2017, plaintiff Cynthia Pagán-Porrata received a total of $1,507.50 in cash overtime. (Docket No. 25 ¶ 38).

38. According to the Department of Human Resources' records, plaintiff Cynthia Pagán Porrata did not report time spent cleaning canine unit kennels or her assigned vehicle in and "Authorization of Overtime" form completed between May 2015 and August 2018. (Docket No. 25 ¶ 39).

Plaintiff Aníbal Jiménez-Haddock

39. Plaintiff Jiménez-Haddock began working for the municipality's police department on April 30, 2009. (Docket No. 25 ¶ 40).

40. Plaintiff Jiménez-Haddock was assigned to the canine unit of the municipality's police department on June 2013. (Docket No. 25 ¶ 41).

41. Plaintiff Jiménez-Haddock resigned effective February 15, 2018. (Docket No. 25 ¶ 42).

42. At the time of his resignation, plaintiff Jiménez-Haddock

was working for the canine unit. (Docket No. 25 ¶ 43).

43. As of May 1, 2015, plaintiff Aníbal Jiménez-Haddock had balance of 34:02 hours in accrued compensatory time. (Docket No. 25 ¶ 44).

44. Plaintiff Aníbal Jiménez-Haddock had worked a total of 93.11 hours in excess of 40 hours per week for the time period commencing May 1, 2015 to August 1, 2018. (Docket No. 25 ¶ 45).

45. Assuming that all of the compensatory time plaintiff Jiménez-Haddock had accrued by May 1, 2015 is Federal Compensatory Time, rather than Municipal Compensatory Time, plaintiff Jiménez-Haddock accrued around 127 (34 + 93 = 127) hours in Federal Compensatory Time, which is 353 (480 - 127 = 353) hours below the 480 hour threshold under the FLSA for the payment of cash overtime. (Docket No. 25 ¶ 46).

46. Between 9-16-2016 and 11-30-2017, plaintiff Jiménez-Haddock received $1,473.51 in cash overtime. (Docket No. 25 ¶ 47).

47. According to the Department of Human Resources' records, plaintiff Aníbal Jiménez Haddock did not report time spent cleaning canine unit kennels or his assigned vehicle in any "Authorization of Overtime" form completed between May 2015 and February 15, 2018. (Docket No. 25 ¶ 48).

Plaintiff Daniel Cumba-Aponte

48. Plaintiff Cumba-Aponte began working for the municipality's police department on October 20, 2008. (Docket No. 25 ¶ 49).

49. Plaintiff Cumba-Aponte was assigned to the canine unit of the municipality's police department on August 4, 2012. (Docket No. 25 ¶ 50).

50. Plaintiff Cumba-Aponte resigned effective July 6, 2018. (Docket No. 25 ¶ 51).

51. At the time of his resignation, plaintiff Cumba-Aponte was working for the canine unit. (Docket No. 25 ¶ 52).

52. As of May 1, 2015, plaintiff Daniel Cumbas-Aponte had balance of 250:11 hours in accrued compensatory time.

(Docket No. No. 25 ¶ 53).

53. Plaintiff Daniel Cumbas-Aponte had worked a total of 232.15 hours in excess of 40 hours per week for the time period commencing May 1, 2015 to August 1, 2018. (Docket No. No. 25 ¶ 54).

54. Assuming that all of the compensatory time plaintiff Cumba-Aponte had accrued by May 1, 2015 is Federal Compensatory Time, rather than Municipal Compensatory Time, plaintiff Cumba-Aponte accrued around 482 (250+232= 482) hours in Federal Compensatory Time, which is 2 (482 - 480 = 2) hours over the 480 hour threshold under the FLSA for the payment of cash overtime. (Docket No. 25 ¶ 55).

55. According to the Report, plaintiff Cumba-Aponte exceeded the 480 hour threshold under the FLSA for the payment of cash overtime on June 24, 2018, when he accumulated 3.10 hours in excess of 40 work hours. (Docket No. 25 ¶ 56).

56. Between 10-1-2017 and 11-30-2017, plaintiff Cumba-Aponte received $1,564.87 in cash overtime. (Docket No. 25 ¶ 57).

57. According to the Department of Human Resources' records, plaintiff Daniel Cumba Aponte did not report time spent cleaning canine unit kennels or his assigned vehicle in any "Authorization of Overtime" form completed between May 2015 and July 6, 2018. (Docket No. 25 ¶ 58).

Plaintiff Roberto Santos-Torres

58. Plaintiff Santos-Torres began working for the municipality's police department on April 12, 2010. (Docket No. 25 ¶ 59).

59. Plaintiff Santos-Torres was assigned to the canine unit of the municipality's police department on September 2014. (Docket No. 25 ¶ 60).

60. Plaintiff Santos-Torres continues working for the canine unit. (Docket No. 25 ¶ 61).

61. As of May 1, 2015, plaintiff Roberto Santos-Torres had a balance of 61:13 hours in accrued compensatory time. (Docket No. 25 ¶ 62).

62. Plaintiff Roberto Santos-Torres had worked a total of 111.15 hours in excess of 40 hours per week for the time period

commencing May 1, 2015 to August 1, 2018. (Docket No. 25 ¶ 63).

63. Assuming that all of the compensatory time plaintiff Santos-Torres had accrued by May 1, 2015 is Federal Compensatory Time, rather than Municipal Compensatory Time, plaintiff Santos-Torres accrued around 172 (61 + 111 = 172) hours in Federal Compensatory Time, which is 308 (480 - 172 = 308) hours below the 480 hour threshold under the FLSA for the payment of cash overtime. (Docket No. 25 ¶ 64).

64. Between 10-1-2017 and 11-30-2017, plaintiff Santos-Torres received $1,413.61 in cash overtime. (Docket No. 25 ¶ 65).

65. According to the Department of Human Resources' records, plaintiff Santos-Torres did not report time spent cleaning canine unit kennels or his assigned vehicle in any "Authorization of Overtime" form completed between May 2015 and August 2018. (Docket No. 25 ¶ 66).

Plaintiff Carlos Morales-Figueroa

66. Plaintiff Morales-Figueroa began working for the municipality's police department on April 12, 2010. (Docket No. 25 ¶ 67).

67. Plaintiff Morales-Figueroa was assigned to the canine unit of the municipality's police department on May 2016. (Docket No. 25 ¶ 68).

68. Plaintiff Morales-Figueroa continues working for the canine unit. (Docket No. 25 ¶ 69).

69. As of May 1, 2015, plaintiff Carlos Morales-Figueroa had a balance of 29:35 hours in accrued compensatory time. (Docket No. 25 ¶ 70).

70. Plaintiff Carlos Morales-Figueroa had worked a total of 84.95 hours in excess of 40 hours per week for the time period commencing May 1, 2015 to August 1, 2018. (Docket No. 25 ¶ 71).

71. Assuming that all of the compensatory time plaintiff Morales-Figueroa had accrued by May 1, 2015 is Federal Compensatory Time, rather than Municipal Compensatory Time, plaintiff Morales-Figueroa accrued around 115 (30 + 85 = 115) hours in Federal Compensatory Time, which is 365 (480

- 115 = 365) hours below the 480 hour threshold. (Docket No. 25 ¶ 72).

72. Between 9-16-2016 and 11-30-2017, plaintiff Morales-Figueroa received $1,319.72 in cash overtime. (Docket No. 25 ¶ 73).

73. According to the Department of Human Resources' records, plaintiff Morales-Figueroa did not report time spent cleaning canine unit kennels or his assigned vehicle in any "Authorization of Overtime" form completed between May 2015 and August 2018. (Docket No. 25 ¶ 74).

Plaintiff Luis Ortiz Ojeda

74. Plaintiff Ortiz-Ojeda began working for the municipality's police department on April 12, 2010. (Docket No. 25 ¶ 75).

75. Plaintiff Ortiz-Ojeda worked for the canine unit of the municipality's police department from March 2015 to March 2016. (Docket No. 25 ¶ 76).

76. Plaintiff Ortiz-Ojeda continues working for the municipality's police department, but has not worked for the municipality's canine unit since March 2016. (Docket No. 25 ¶ 77).

77. As of May 1, 2015, plaintiff Luis Ortiz-Ojeda had a balance of 36:51 hours in accrued compensatory time. (Docket No. 25 ¶ 78).

78. Plaintiff Luis Ortiz-Ojeda had worked a total of 16.65 hours in excess of 40 hours per week for the time period commencing May 1, 2015 to August 1, 2018. (Docket No. 25 ¶ 79).

79. Assuming that all of the compensatory time plaintiff Ortiz-Ojeda had accrued by May 1, 2015 is Federal Compensatory Time, rather than Municipal Compensatory Time, plaintiff Ortiz-Ojeda accrued around 24 (7 + 17 = 24) hours in Federal Compensatory Time, which is 456 (480 - 24 = 456) hours below the 480 hour threshold under the FLSA for the payment of cash overtime. (Docket No. 25 ¶ 80).

80. Between 10-1-2017 and 11-30-2017, plaintiff Ortiz-Ojeda received $ 695.63 in cash overtime. (Docket No. 25 ¶ 81).

81. According to the Department of Human Resources' records, plaintiff Morales-Figueroa did not report time spent

cleaning canine unit kennels or his assigned vehicle in any
"Authorization of Overtime" form completed between March
2015 and March 2016. (Docket No. 25 ¶ 82).

Other Statements

82. Interrogatory No. 3 of the municipality's first set of
interrogatories states that "[w]ith respect to the
averments contained in Count I of the Complaint, provide
the following information with regards to the Municipality
of Guaynabo: (a) the name, address and telephone number
of each person having knowledge of the facts relating to
said averment; all facts upon which you base said averment."
(Docket No. 25 ¶ 83).

83. Count I of the Complaint is plaintiffs' claim under the Fair
Labor Standards Act, 29 U.S.C. § 201 *et seq.* (Docket No. 25
¶ 84).

84. Plaintiff Pagán-Porrata worked 37.05 hours during the week
ending January 29, 2017, not taking into account the
assigned 3.5 hours for off-duty canine care. (Docket No. 25
¶ 85).

Metropolitan Animal Clinic

85. Since at least 2014, the Municipality of Guaynabo has had a
contract with Metropolitan Animal Clinic to take care of
the medical and grooming needs of all the dogs belonging to
the municipality's canine unit. (Docket No. 25 ¶ 86).

86. Metropolitan Animal Clinic is located in the Municipality
of Guaynabo, and it is run by Dr. José, M. Trujillo, a
veterinarian. (Docket No. 25 ¶ 87).

87. The services Metropolitan Animal Clinic provides to the
dogs belonging to the municipality's canine unit include
bathing, boarding, grooming, and addressing all the dog's
medical needs, including medical emergencies. (Docket No.
25 ¶ 88).

88. Metropolitan Animal Clinic's current hours of operation are
from Monday to Thursday, 8:00 AM to 7:00 PM, Friday from
8:00 AM to 5:00 PM, and Saturday from 9:00 AM to 5:00 PM.
(Docket No. 25 ¶ 89).

The Municipality of Guaynabo's Vehicle Maintenance Service
Station

89. The Municipality of Guaynabo has a vehicle maintenance
    service station, located in Guaynabo, Road No. 835, Mamey
    Ward, which is run by Juan Cruz-Santiago, Supervisor of
    Transportation of the Municipality of Guaynabo's Police
    Department. (Docket No. 25 ¶ 90).

90. The vehicle maintenance service station provides a wide
    range of maintenance and light repair services to the
    vehicles belonging to the municipality, including the ones
    assigned to the Municipality of Guaynabo's Police
    Department, which are given priority. (Docket No. 25 ¶ 91).

91. Among the services provided is washing and cleaning all
    vehicles of the Municipality of Guaynabo's Police
    Department. (Docket No. 25 ¶ 92).

92. Personnel from the vehicle maintenance service station are
    assigned to wash and clean the vehicle that is brought to
    the station. (Docket No. 25 ¶ 93).

93. The vehicle maintenance service station maintains regular
    hours of operation. That is, from Monday to Friday, 5:00 AM
    to 6:00 PM, and Saturday 7:00 AM to 4:00 PM. (Docket No. 25
    ¶ 94).

## IV.   ANALYSIS

### A. *Prima Facie* claims under the FLSA

The FLSA seeks to "protect all covered workers from
substandard wages and oppressive working hours." Encino Motorcars,
LLC v. Navarro, 136 S. Ct. 2117, 2121 (2016) (quoting Barrentine
v. Arkansas-Best Freight System, Inc., 450 U.S. 728, 739, (1981)).
In order to do so, the FLSA establishes "federal minimum-wage,
maximum-hour, and overtime guarantees." Giguere v. Port Res. Inc.,
927 F.3d 43, 45 (1st Cir. 2019). The FLSA thus requires employers
to pay overtime compensation to covered employees who surpass a

40-hour work week or the work week established by the employer
(here it was 35 hours per week). This "overtime rate should 'not
be less than one and one-half times the regular rate' of the
employee's pay." Encino Motorcars, LLC, 136 S. Ct. at 2121 (quoting
29 U.S.C. § 207(a)).

To prevail under the FLSA's provisions, an employee alleging
unpaid overtime wages must prove that they worked longer than their
assigned hours and that they were not compensated accordingly.
Hence, the most important factors of an FLSA claim are that: "(1)
plaintiffs must be employed by the defendants; (2) the work
involved interstate activity; […] (3) plaintiffs 'performed work
for which they were under-compensated.'" Santos Cordova v.
Municipality of San Juan, 2017 WL 6542255, at *9 (D.P.R. 2017)
(quoting Manning v. Boston Med. Ctr. Corp., 725 F.3d 34, 43 (1st
Cir. 2013)).[8]

The FLSA is clear that "[w]ork not requested but suffered or
permitted is work time." Manning v. Boston Med. Ctr. Corp., 725
F.3d 34, 44 (1st Cir. 2013) (quoting 29 C.F.R. § 785.11). "Work",
as construed by the courts, tends to mean "all activities
controlled or required by the employer and pursued necessarily and
primarily for the benefit of [the] employer and [their] business."

---

[8] The Court notes that the case at bar bears a striking resemblance to Santos
Cordova v. Municipality of San Juan, 2017 WL 6542255, at *9 (D.P.R. 2017). There
too, canine unit officers averred they worked more than 14 hours in overtime
hours caring for their assigned dogs.

Palmer v. Stewart County School Dist., 178 Fed. Appx. 999, 1005 (11th Cir. 2006) (citation omitted). Here, there can be no doubt that the work performed in caring for the dogs was to Defendants' benefit. Both United States Courts of Appeals and District Courts have held that at least some of the time canine officers spent caring for their dogs outside of normal work hours constitutes "work" under the FLSA. *See e.g.*, Brock v. City of Cincinnati, 236 F.3d 793, 804 (6th Cir. 2001); Holzapfel v. Town of Newburgh, N.Y., 145 F.3d 516, 522 (2d Cir. 1998); Rudolph v. Metropolitan Airports Comm'n, 103 F.3d 677, 681 (8th Cir. 1996); Martinez v. Hernando Cty. Sheriff's Office, 2013 WL 12123320, at *2 (M.D. Fla. 2013), Letner v. City of Oliver Springs, 545 F. Supp. 2d 717, 723 (E.D. Tenn. 2008); Levering v. District of Columbia, 869 F.Supp. 24, 27 (D.D.C. 1994). The main issue here is therefore not whether the overtime work in question was "work", rather, if Defendants knew that the 3.5 hours allotted to the work were insufficient.

The First Circuit has stated that "an employer's actual or imputed knowledge [...] is a necessary condition to finding the employer suffers or permits that work." Manning, 725 F.3d at 44. Still, when the issue is regarding work that is performed outside of the regular employment area, Plaintiffs will need to rely on Defendant's constructive knowledge of the hours worked in excess of their regular shifts to prove that the allotted time was insufficient. *See* Holzapfel, 145 F.3d at 524 ("An employer need

not have actual knowledge of such off-site work; constructive knowledge will suffice.") It is the employee's burden to demonstrate that his employers knew of the overtime work performed. Thus, a record of alleged "off-the-clock" work alone will not suffice. Instead, Plaintiffs may provide "proof of a pattern or practice of employer acquiescence in such work, but plaintiffs may not merely estimate off-the-clock hours worked without presenting a showing that [their employer] 'suffered' that work." Andrews v. Weatherproofing Techs., Inc., 277 F. Supp. 3d 141, 151 (D. Mass. 2017). These half-an-hour per day concessions were afforded to Plaintiffs according to a letter sent on December 2016 regarding the following year's hourly schedule. (Docket No. 25 ¶¶ 23-26). Plaintiffs acknowledged the contents of the letter and that they were to get ".5" hours of canine-care per day in their *Response*. (Docket No. 35 ¶¶ 23-26). Plaintiffs however had a duty to provide proof that the 3.5 hours already afforded to them were insufficient and thus required them to work overtime. They failed to provide such proof and their omission is compounded by their admission that they knew that Defendants had hired the Metropolitan Animal Clinic and the Municipality's vehicle maintenance service station for medical and grooming services and for maintenance for all vehicles belonging to the Municipality's Police Department, respectively. (Docket No. 35 ¶¶ 86-94). Therefore, the availability of services providing vehicle maintenance for

example, a task which Plaintiffs alleged took them 2.5-3 hours to complete per weekend, heightened the burden on Plaintiffs to justify their claim that .5 hours of canine care per day was insufficient.

On the other hand, "[w]ork not requested but suffered or permitted is work time" if "[t]he employer knows or has reason to believe that [the employee] is continuing to work." White v. Baptist Mem'l Health Care Corp., 699 F.3d 869, 878-79 (6th Cir. 2012) (quoting 29 C.F.R. § 785.11.). To wit, it is also the employer's responsibility to keep accurate records of when an employee is working, either on-site or off. See Tyson Foods, Inc. v. Bouaphakeo, 136 S. Ct. 1036, 1042 (2016) (quotation omitted) ("The FLSA also requires an employer to 'make, keep, and preserve [...] records of the persons employed by him and of the wages, hours, and other conditions and practices of employment.'"). A process wherein employees can report their overtime hours can help provide the reasonable diligence expected of employers to prove that they did or did not know about the overtime work performed by employees. See Garcia v. Draw Enterprises III, LLC, 2018 WL 6045206, at *5 (N.D. Ill. 2018). However, "*if* an employer establishes a reasonable process for an employee to report uncompensated work time, the employer is not liable for non-payment if the employee fails to follow the established process." Newsom v. Detroit Area Agency on Aging, 2018 WL 5617170, at *3 (E.D. Mich.

2018) (quotation omitted). In the case at bar, Plaintiffs admitted
that they were informed that to get overtime pay they needed to
fill out the "Authorization of Overtime" form. (Docket No. 35 ¶
8). They also admitted that they were aware that "anyone who works
overtime without the corresponding authorization will not be
credited with the overtime worked," and moreover, the Municipality
will not have to provide compensatory time or payment for hours
worked over the 480 hours. (Docket No. 35 at ¶¶ 7 and 9). Plaintiffs
nonetheless also admitted that they did not include in any
"Authorization of Overtime" forms the time spent cleaning the
canine unit kennels or assigned vehicles. (Docket No. 35 at ¶¶ 39,
48, 58, 66, 74 and 82).

    An employer is also held "liable" if "the employer prevents
or discourages accurate reporting in practice." Garcia, 2018 WL
6045206, at *5 (quotation omitted). Likewise, knowledge of
overtime work may still be imputed to the employer "when it's
supervisors encourage artificially low reporting or squelch
truthful reports of overtime worked." Holt v. Jefferson Cty. Comm.
for Econ. Opportunity, 2019 WL 1239855, at *13 (N.D. Ala. 2019
(citing Bailey v. TitleMax of Georgia, Inc., 776 F.3d 797, 801
(11th Cir. 2015)). Here, Plaintiffs, via one Unsworn Statement
Under Penalty of Perjury by plaintiff Pagán-Porrata, contend that
a Sergeant directed them not to file the Canine Maintenance Hours.
In particular, they stated that "[i]n September 2017, Sergeant

[sic] Carlos Borges told [the Plaintiffs] to stop turning the worksheet with Canine Maintenance Hours because the Municipality was throwing the sheets away." (Docket No. 35-1 at 2).

A similar situation occurred in Santos-Cordova. In said case, Plaintiffs similarly asserted **via unsworn statements** that they were "prohibited [by an unnamed supervisor] from reporting their overtime" work performed caring for their police dogs. Santos-Cordova, 2017 6542255, at *4. The Court however found suspect that the statements explaining this were "concocted after counsel had conveniently had a chance to review the MSJ's arguments in favor of summary dismissal." Id. The Court therefore concluded that by only referencing undefined discussions with unnamed persons at unspecified times, the statements "definitely appear to have been tailor-made to surmount the Defendant's motion, and are thus deemed a sham." Santos Cordova, 2017 WL 6542255, at *4.

In the case at bar, as in Santos-Cordova, a review of the record reveals that the unsworn statement filed at Docket No. 35-1 also seems to be an attempt to manufacture an issue of fact. As such, this also raises concerns under the sham affidavit rule. To determine whether an affidavit is being used to create a material issue of fact in an attempt to defeat summary judgment, "the court may consider the timing of the affidavit." Rodriguez-Soto v. Presbyterian Med. Anesthesia Grp., 2019 WL 1349991, at *4 (D.P.R. 2019). Here, the unsworn statement filed as an exhibit to

Plaintiffs' *Response* was executed on November 1, 2018 (Docket No. 35-1), four days prior to the filing of Plaintiffs' *Response.* The *Motion for Summary Judgment* was filed on October 1, 2018 (Docket No. 25). Moreover, the discovery deadline was September 5, 2019. (Docket No. 24). Hence, while a party may provide a satisfactory explanation for a post-summary judgement affidavit, "[f]ollowing discovery, a party may not use a later affidavit to contradict facts previously provided to survive summary judgment." Escribano-Reyes v. Prof'l Hepa Certificate Corp., 817 F.3d 380, 385 (1st Cir. 2016) (quotation omitted). No explanation was made as to why Plaintiffs waited to file the affidavit until **after** the summary judgment motion was filed. The First Circuit has found similar chronology issues as "probative of the fact that the non-movant was merely attempting to create an issue of fact." Orta-Castro v. Merck, Sharp & Dohme Quimica P.R., Inc., 447 F.3d 105, 110 (1st Cir. 2006); *see also*, Torres v. E.I. Dupont De Nemours & Co., 219 F.3d 13, 20 (1st Cir. 2000). This Court previously determined that a lack of explanation "pushes [a] sworn statement off the table." Rodriguez-Soto, 2019 WL 1349991, at *4. Therefore "pursuant to the sham affidavit doctrine, the court strikes plaintiff's declaration" and Plaintiffs' pleading that were based on the stricken evidence "will be deemed unsupported." Id. at *5.

A review of the record also reveals that prior to the affidavit filed at Docket No. 35-1, neither Plaintiff Pagán-

Porrata, nor any other Plaintiff for that matter, had mentioned that a supervisor such as Sergeant Borges had instructed them to not file their Canine Maintenance Forms. Hence, this is a new "fact" for purposes of the record. Before, Plaintiffs had only stated in their *Complaint* that Defendants were aware at all times that they typically worked more hours than their scheduled shifts. (Docket No. 1 at 60). Moreover, Pagán-Porrata had only stated in her Answer to Interrogatories dated February 2018 that "[t]he administrative personnel and our supervisors are aware of the time we spend working without being compensated because we report it." (Docket No. 25-24 at 14). The Court will thus disregard the content of the unsworn statement as it is "used to support additional facts purported by the Plaintiffs in the same numbered paragraphs wherein they admitted, denied or qualified the Defendant's proposed factual statements." Santos Cordova, 2017 WL 6542255, at *4.

Therefore the Court finds that overtime reporting procedures were in place for Plaintiffs to report their overtime hours. Other Plaintiffs cannot rely either on Pagán-Porrata's unsworn statement, which the Court already disregarded above, *supra*, as alleged proof that they were discouraged from reporting their overtime hours. Clearly, they did have processes to record their overtime related to their dog-caring duties as evidenced by the report of hours worked presented by Defendants, and which was also included as Plaintiffs' exhibits. (Docket No. 25-18 to 25-23).

Additionally, Plaintiffs themselves admitted to not filing the "Canine Maintenance Hours" form, a form they knew they had to file if they wanted to recover overtime pay for hours spent caring for the dogs. (Docket No. 35 at ¶¶ 39, 48, 58, 66, 74 and 82). In the case at bar, Plaintiffs do not contend they did not know they had to fill out those forms. On the contrary, they knew they had to fill them out. (Docket No. 35 at 8). As in <u>Santos-Cordova</u>, here too there was a Manual which dictated how officers were to establish the accrual and use of compensatory time. (Docket No. 30-2). Likewise, in <u>Forrester v. Roth's I.G.A. Foodliner, Inc.</u> the United States Circuit Court of Appeals for the Ninth Circuit determined that if an employee failed to notify its employer or deliberately prevented them from acquiring knowledge of overtime work performed, then an employer's failure to not pay for those overtime hours did not violate FLSA provisions:

> An employer must have an opportunity to comply with the provisions of the FLSA. This is not to say that an employer may escape responsibility by negligently maintaining records required by the FLSA, or by deliberately turning its back on a situation. However, where the acts of an employee prevent an employer from acquiring knowledge, […] the employer cannot be said to have suffered or permitted the employee to work in violation. <u>Forrester v. Roth's I. G. A. Foodliner, Inc.,</u> 646 F.2d 413, 414 (9th Cir. 1981).

Even so, just because Plaintiffs failed to report the overtime hours, does not completely preclude a request for compensation. Rather, "[e]mployees may [still] recover unpaid wages for overtime

hours that were not recorded on their time sheets if they can prove that the employer knew or should have known about the overtime work through some alternative source." Woodman v. City of Hazen, Ark., 2009 WL 2579266, at * 3 (E.D. Ark. 2009) (citing Bailey v. County of Georgetown, 94 F.3d 152, 157 (4th Cir.1996)). Plaintiffs however failed to present an "alternative source" which could prove that Defendants knew or should have known about overtime being performed. While Plaintiffs attempted to use the hour records to demonstrate that Plaintiffs' hours were allegedly miscalculated, the reports clearly show that all Plaintiffs were recorded as having performed their 3.5 hours of "dog care hours worked." (Docket No. 35-2, 35-3, 35-4, 35-5, 35-6 and 35-7). Plaintiffs failed to file additional overtime beyond the aforementioned 3.5 hours. They cannot now state that they failed to file those excess hours because they were supposedly discouraged from doing so. **There is no other evidence in the record which could support this finding.**

In summary, Plaintiffs contend that the 3.5 hours allotted to dog care a week were insufficient, and they therefore worked overtime because of it. However, Plaintiffs failed to prove as much. They also failed to prove that Defendants had constructive knowledge of the overtime work not being reported by them. Without more information to justify the alleged 14 hours spent taking care of their assigned dogs on a weekly basis, the Court recognizes

that determining the exact hours Plaintiffs spent taking care of their dogs would be a problematic task. Multiple Courts of Appeals and District Court cases support such a finding. *See e.g.*, Krause v. Manalapan Twp., 486 F. App'x 310, 314 (3d Cir. 2012); Brock, 236 F.3d at 803; Holzapfel, 145 F.3d at 526 ("The individual traits and needs of officers and animals preclude any easy determination as to what is a "reasonable time" for a K-9 officer to take care of his dog. Moreover, […] the ranges of time involved in the K-9 compensation cases, suggest no clear-cut answer will be found."); Santos Cordova, 2017 WL 6542255, at *13 (quotation and internal citation omitted) ("**It is not enough for plaintiffs to show that they worked more than agreed. They must show that the agreement provided an unreasonably short amount of time to perform the assigned tasks. [...] This they have failed to do**."); Cabrera v. Town of Lady Lake, Fla., 2013 WL 12092573, at *10 (M.D. Fla. Mar. 28, 2013), aff'd, 556 F. App'x 801 (11th Cir. 2014).

     Plaintiffs failed to create a genuine issue of material fact and thus summary judgment is **GRANTED** dismissing **WITH PREJUDICE** their claims under the FLSA, 29 U.S.C. §201, *et seq*.

## B. Supplemental State Law Claims

     The six co-plaintiffs against which the Municipality sought summary judgment also filed claims grounded on violations to local labor laws and the Puerto Rico Constitution. Defendants have requested the dismissal of these claims. (Docket No. 27 at 24-25).

First Circuit case law is clear that if federal claims are properly dismissed, as in the case at bar, then a District Court is well within its discretion to decline to exercise supplemental jurisdiction over pending state-law claims. *See e.g.,* <u>Massó-Torrellas v. Municipality of Toa Alta</u>, 845 F.3d 461, 469-70 (1st Cir. 2017); *see also*, <u>Rivera-Diaz v. Humana Ins. of Puerto Rico, Inc.</u>, 748 F.3d 387, 392 (1st Cir. 2014) (quoting <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 n.7, (1988)) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors [...] will point toward declining to exercise jurisdiction over the remaining state-law claims."). Since all of Plaintiffs' federal claims have been dismissed and no other grounds for jurisdiction exist, all supplemental claims under P.R. Laws Ann. tit. 29, §173 and §273(a), and pursuant to Article II, Section 16 of the Puerto Rico Constitution, are hereby **DISMISSED WITHOUT PREJUDICE.**

<h3 align="center">V.   CONCLUSION</h3>

For the reasons set forth above, the Court **GRANTS** Defendants' *Motion for Summary Judgment* (Docket No. 27). Judgement shall be entered accordingly.

**IT IS SO ORDERED.**

In San Juan Puerto Rico, this 27th day of August 2019.

S/ RAÚL M. ARIAS-MARXUACH

United States District Judge